# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VOTER VERIFIED, INC.,**

        **Plaintiff,**

**-vs-**                          **Case No.  6:09-cv-1969-Orl-19KRS**

**ELECTION SYSTEM & SOFTWARE,
INC.,**

        **Defendant.**

_____

## ORDER

This case comes before the Court on the following:

1.     Motion for Summary Judgment of Non-Infringement of Claims 1-48, 50-55, 57-84, and 86-92 by Election Systems & Software, Inc. (Doc. No. 166, filed June 9, 2011);

2.     Response to the Fourth Motion for Summary Judgment of Diebold, Incorporated and the Third Motion of Summary Judgment of Premier Election Solutions, Inc. (Doc. No. 172, filed July 9, 2011); and

3.     Reply in Support of Their Respective Motions for Summary Judgment of Non-Infringement by Election Systems & Software, Inc. (Doc. No. 179, filed July 24, 2011).

### Background

## I. Procedural History

On November 19, 2009, Voter Verified, Inc. ("VVI") filed the present action against Election Systems & Software, Inc. ("ES&S").  (Doc. No. 1.)  The Complaint, seeking both damages and

injunctive relief, alleges that ES&S willfully infringed United States Patents Nos. 6,769,613 ("the '613 patent") and RE40,449 ("the '449 patent"). (*Id.* at 11-12.) ES&S denies VVI's allegations of infringement and seeks a declaratory judgment that: (1) the '613 and the '449 patents are invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and 112; (2) the '613 patent is invalid pursuant to 35 U.S.C. § 251; and (3) ES&S is not infringing and has never infringed the '613 and '449 patents. (Doc. No. 17, filed Jan. 13, 2010.)

On April 28, 2010, VVI filed a Motion for Summary Judgment arguing that there were no genuine issues of material fact relating to the direct infringement of claim 49 of the '613 and '449 patents. (Doc. No. 71 at 1.) VVI also moved for summary judgment on the validity of the asserted patents and the issue of intervening rights. (*Id.*) On May 28, 2010, ES&S responded in opposition to VVI's summary judgment motion and filed a Cross Motion for Summary Judgment, contending that: (1) the '613 patent cannot be infringed because it was surrendered; (2) claims 49, 56, 85, 93, and 94 of the '449 patent are not infringed; and (3) claims 49, 56, 85, 93, and 94 of the '449 patent are invalid as anticipated under 35 U.S.C. § 102. (Doc. No. 84.) Plaintiff's Motion for Summary Judgment was granted in part and denied in part. (Doc. No. 114 at 37-39.) The Motion was granted to the extent VVI sought a finding that: (1) the claims of the '449 patent are not invalid under 35 U.S.C. § 101; (2) the claims of the '449 patent, other than claim 94, are not invalid under 35 U.S.C. § 112; and (3) claims 1-48, 50-84, and 86-92 are not invalid under 35 U.S.C. § 102. (*Id.* at 37-38.) ES&S's Cross Motion for Summary Judgment was also denied in part and granted in part. (*Id.*) The Motion was granted to the extent ES&S sought a finding that: (1) the '613 patent was surrendered to the United States Patent and Trademark Office ("PTO"); (2) the Accused Systems do not infringe claims 49, 56, 85, and 93 of the '449 patent; (3) claim 94 of the '449 patent is invalid under 35 U.S.C.

§ 112; and (4) the enumerated Risks Digest articles qualify as prior art.  (*Id.* at 38.)  ES&S was also

granted leave to file a supplemental summary judgment motion addressing the issue of obviousness.

(*Id.*)

On November 9, 2010, ES&S filed a Motion and Memorandum in Support of Invalidity of

Claim 49 of U.S. Patent No. RE40,449.  (Doc. No. 119.)  The Motion was granted to the extent ES&S

sought a finding that claim 49 of the '449 patent is invalid as obvious under 35 U.S.C. § 103.  (Doc.

No. 135.)  However, because ES&S did not address the obviousness of the remaining claims, the

Court granted VVI's Second Motion for Summary Judgment to the extent it sought a finding that

claims 1-48, 50-84, and 86-92 are valid.  (*Id.* at 22.)

On June 9, 2011, ES&S filed the present Motion for Summary Judgment of Non-Infringement

of Claims 1-48, 50-55, 57-84, and 86-92 of U.S. Patent No. RE40,449 and Memorandum in Support.

(Doc. No. 166.)  In the Motion, ES&S contends that no product or combination of products sold by

ES&S infringes claim 1, claim 25, or any dependent claim of the '449 patent.  (*Id.*)  VVI responded

in opposition to ES&S's Motion on July 9, 2011, (Doc. No. 172), and ES&S filed a reply on July 24,

2011, (Doc. No. 179).

## II.  The Asserted Patents

The patents at issue in the present case include the '613 and '449 patents (collectively, the

"Asserted Patents").  The '613 patent issued on August 3, 2004.  (Doc. No. 1-1 at 1.)  On February

14, 2005, a reissue application for the '613 patent was filed.  (*Id.* at 10.)  On August 5, 2008, the '613

patent was surrendered to the United States Patent and Trademark Office ("PTO") and reissued as the

'449 patent.  (*Id.*)  VVI is the owner by assignment of both the '613 and '449 patents.  (*Id.* at 30.)

In general, the Asserted Patents involve a computer voting system that displays ballots for voting, instructs voters to input their selections, prints the votes of the voters, instructs the voters to review the printed ballots for accuracy, and then instructs the voters to submit acceptable printed ballots for tabulation.  By way of example, claim 1 of the '449 patent recites:

> 1.  A self-verifying voting system comprising: one or more voting stations comprising:
>
> (a) one or more computer programs which operate in a computer to display general voting instructions, at least one election ballot showing the candidates and issues to be voted on, and directions to the voter for operation of the system; present the election ballot for voting and input of votes by the voter; accept input of the votes from the voter; print out the election ballot according to which the voter voted with the votes of the voter printed thereon, so that the votes of the voter are readable on said election ballot by the voter and readable by a tabulation machine; record the votes in the computer; and compare the votes read by a ballot scanning machine with the votes recorded in the computer;
>
> (b) a computer with at least one display device, at least once device to accept voting input from a voter, at least one data storage device, and sufficient memory to provide for the operation of said computer program in which said computer program runs;
>
> (c) a printer connected to said computer for printing the election ballot according to which the voter voted;
>
> (d) a ballot scanning means for reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter;
>
> (e) means for connecting said ballot scanning means to said computer; and a means for tabulating the printed ballots generated by said one or more voting stations.

## III.  The AutoMark System

The AutoMark System is an electronic ballot marking device designed to machine-mark the voting selections for voters who are visually impaired, have a disability, or who are more comfortable

using an alternative language. (Doc. No. 166-1 ¶ 3.)  The AutoMark System includes: (1) a computer; (2) a scanner; (3) a touch screen display; (4) an audio output; (5) braille-embossed keys; and (6) a printer.  (*Id.* ¶ 4.)  A voter using the AutoMark System initiates the voting process by inserting a blank paper ballot into the ballot feed tray.  (*Id.* ¶ 6.)  The AutoMark System then scans the paper ballot and either displays the various races on a touch screen or reads an "audio ballot."  (*Id.* ¶¶ 6-7.) The voter may then make his or her selections by touching buttons on the screen.  (*Id.* ¶ 9.)  After all of the votes have been selected, a "summary screen" is displayed on the touch screen for review by the voter.  (*Id.* ¶ 10.)  At this time, the voter may change any of his or her selected votes.  (*Id.*)  Once the voter verifies that the selected votes are correct, the AutoMark System produces a market ballot, printing the voter's selection on his or her paper ballot by filling in ovals or arrows corresponding to the selected candidates.  (*Id.*)

The AutoMark System may also be used to verify the accuracy of paper ballots.  (*Id.* ¶ 13.) When the AutoMark System is used in this manner, the voter inserts a previously marked ballot into the ballot feed tray.  (*Id.*)  The AutoMark System then reads the markings on the inserted ballot and displays a "verification summary" of the votes.  (*Id.*)  If the voter wishes to make changes to the ballot, a new ballot must be requested and the voting process must be repeated.  (*Id.*)  The voter's selections are not stored in the permanent memory of the AutoMark System's terminal.  (*Id.* ¶ 14.)

## IV.  The iVotronic RTAL System

The iVotronic RTAL System is a direct recording electronic system that uses a touch screen terminal to display ballots and record votes.[1]  (Doc. No. 166-1 ¶ 16.)  The iVotronic RTL System

---

[1] The AutoMark System and the iVotronic RTAL System will be referred to collectively as the "Accused Systems."

includes: (1) a card reader; (2) a touchscreen; (3) an audio output; (4) memory for storing election ballots; and (5) a printer.  (*Id.* ¶ 17.)  A voter using the iVotronic RTAL System begins the voting process by inserting a personalized electronic ballot card into a terminal.  (*Id.* ¶ 18.)  A ballot then appears on the touch screen, and the voter selects candidates by pressing on the touch screen.  (*Id.*)  As the voter makes selections, a Real-Time Audit Log printer prints a continual hard copy log of each action taken by the voter.  (*Id.* ¶ 21.)  A voter can verify the candidates or issues he or she selected by reviewing the hard copy log.  (*Id.*)  When the voter has finished making his or her selections, the voter presses the red "vote" button at the top of the screen, and the votes are saved to the permanent memory of the iVotronic RTAL System.  (*Id.* ¶ 19.)  At the end of the day, the electronic votes stored in the memory of each iVotronic RTAL System are transferred to the master electronic ballot card which is used to transmit the entire precinct's election results via modem to election headquarters.  (*Id.* ¶ 20.)  Each iVotronic RTAL System also prints summary reports displaying the total number of votes in both a bar code and a human readable format.  (*Id.* ¶ 22.)  The hard copy logs are retained for audit purposes.  (*Id.* ¶ 23.)

### Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  A dispute of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  A dispute of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Id.* at 1260.  A court must decide "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## Analysis

### I. Independent Claims 1 and 25

ES&S first contends that it does not infringe independent claims 1 and 25 of the '449 patent because no product or combination of products sold by ES&S uses a ballot scanning means interfaced with a computer program to compare the votes on a printed ballot to the votes recorded in a computer. (Doc. No. 166 at 4, 7.) In response, VVI maintains that the Accused Systems infringe claim 1 and

claim 25 of the '449 patent because a voter using the systems performs the element of comparing the votes on a printed ballot to the votes recorded in a computer.  (Doc. No. 172 at 6-7.)

An infringement analysis involves two steps.  First, the court must construe the claims, a question of law in which the scope and meaning of the asserted claims is defined.  *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1341 (Fed. Cir. 2003).  The claims as construed are then compared to the accused device.  *Id.*  This is a question of fact.  *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998).  In order to establish patent infringement, a patentee must demonstrate by a preponderance of the evidence "that an accused product embodies all limitations of the claim either literally or by the [doctrine of equivalents]."  *Amgen Inc. v. F. Hoffman-LA Roche Ltd*, 580 F.3d 1340, 1374 (Fed. Cir. 2009) (citing *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008)).

To literally infringe a claim, "every limitation set forth in a claim must be found in an accused product, exactly."  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).  "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method."  *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (citations omitted).  Equivalents are assessed on a limitation-by-limitation basis.  *Id*. at 1328 (citing *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).

ES&S maintains that it does not infringe independent claims 1 and 25 of the '449 patent either literally or under the doctrine of equivalents because no product or combination of products sold by

ES&S meets element (d) of claim 1 or element (e) of claim 25, which are identical ("Contested Elements"). The Contested Elements recite:

> a ballot scanning means for reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter

Both VVI and ES&S maintain that the Contested Elements are set forth in the "means-plus-function" format,[2] (Doc. No. 166 at 5; Doc. No. 172 at 2), a claim format that recites "a function to be performed rather than definite structure or materials for performing that function." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). The use of the term "means" in the Contested Elements creates a presumption that § 112, ¶ 6 has been invoked. *See Kemco Sales, Inc. v. Control Papers Co., Inc.*, 208 F.3d 1352, 1361 (Fed. Cir. 2000) (finding that the use of the term "means" in a claim limitation creates a presumption that § 112, ¶ 6 has been invoked). This presumption is further supported by the fact that the elements recite a function but do not recite any structure for performing that function. *Id*. (noting that the presumption may be overcome if the properly construed claim limitation recites a sufficient structure to perform the claimed function). Furthermore, the parties do not dispute the construction of the Contested Elements as means-plus-function limitations. Accordingly, the Court finds that the Contested Elements are recited in the "means-plus-function" format under § 112, ¶ 6.

---

[2] Section 112, paragraph 6 provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

The proper construction of a means-plus-function limitation involves two steps.  First, the court must identify the claimed function.  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1324 (Fed. Cir. 2001) (citing *Kemco Sales*, 208 F.3d at 1361).  "In identifying the function of a means-plus-function claim, a claimed function may not be improperly narrowed or limited beyond the scope of the claim language." *Lockheed Martin*, 324 F.3d at 1319 (citing *Micro Chem. Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).  Once the claimed function is identified, the patent must be examined to identify the corresponding structure disclosed in the specification that performs the claimed function.  *Telemac Cellular*, 247 F.3d at 1324.  "In order to qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) (citation omitted).

Having determined that the Contested Elements fall under § 112, ¶ 6, the Court must begin the construction of these elements by identifying the claimed function.  The plain language of the Contested Elements recites the function as "reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter."  While VVI contends that the function is limited to "reading the votes on the printed ballot printed according to the election ballot," VVI provides no argument to support this truncated reading of the claimed function, and such a reading is not supported by the plain language of the Contested Elements which explicitly describes the claimed function to include reading the printed ballot in a manner that permits the computer program to compare the printed votes with the votes recorded by the computer.  *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005) (finding that "a court may not

-10-

construe a means-plus-function limitation by adopting a function different from that explicitly recited in the claim" or by "importing the functions of a working device into the specific claims, rather than reading the claims for their meaning independent of any working embodiment" (quotation omitted)). Moreover, the computer program comparison portion of the claimed function adds substance to the claim by further describing the manner in which the ballot scanning means is to read the votes on the printed ballot, specifically, in a manner that allows the votes to be compared to the votes recorded in the computer by a computer program. *Cf. Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993) (declining to construe the function to include the claim language that merely described the inherent results of the claimed function).  Therefore,  in accordance with the plain language of the claims, the Court construes the function recited in the Contested Elements as reading the votes on the printed ballot printed according to the election ballot which the voter voted so that the votes shown on the printed ballot are compared by the computer program with the votes recorded in the computer for the voter.

The structure corresponding to the claimed function of the Contested Elements must next be identified.  ES&S contends that the proper structure is a ballot scanning machine interfaced with a computer using a computer program.  (Doc. No. 166 at 6.)  In response, VVI argues that the while ES&S "correctly identified the structure," it failed to identify an alternative structure, comparison by the voter.  (Doc. No. 172 at 2-4.)

The specification of the '449 patent provides the following descriptions of structure corresponding to the claimed function:

> A printed ballot produced by the computer voting station which shows the votes of a voter is then presented to the voter and either compared by the voter, or by operation of the computer program for the voting system with a ballot scanning machine, the

machine capable of reading ballot selections, with the votes of the voter temporarily stored in the computer.  col. 2 ln. 25-33

Also connected to the computer in the voting station may be a machine which is capable of reading ballot selection markings previously described, either directly, through a master computer, or network to which the computer for the voting station is connected.  Such a machine will hereinafter be referred to as a "ballot scanning machine" and is essentially an electro-optical sensing device from the well-known art. Such a ballot scanning machine may be interfaced with the computer in the voting station to scan the paper ballot printed by the printer as voted by the voter.  col 3. ln. 54-64.

The printed ballot produced by the computer voting station which shows the votes of a voter presented to the voter may either be compared by the voter, or by operation of the computer program for the voting system with a ballot scanning machine, the machine capable of reading ballot selection markings, or by both methods, with the votes of the voter temporarily stored in the computer. col. 3 ln. 64 - col. 4 ln.4.

The result of the comparison is then judged acceptable or unacceptable by the voter, in the case of comparison by the voter, or by the computer program for the voting system, in the case of comparison with the ballot as read by the ballot scanning machine in the voting station. . . .  col. 4 ln. 7-11.

. . . voter observes that the printed ballot correctly represents the votes of the voter, the ballot may be submitted by the voter for processing to a ballot scanning machine interfaced with that voting station.  Such processing may proceed in the computer program by comparison of the votes represented by the ballot selection marking on the printed ballot with the votes stored in the computer for the voting station.  col 5 ln. 22-28.

In this manner, the specification repeatedly discloses the structure corresponding to performing the claimed function as a ballot scanning machine interfaced with a computer program that compares the votes read by the ballot scanning machine with the votes recorded in the computer.  Such a ballot scanning machine interfaced with the computer program described specifically in element (a) of claims 1 and claim 25 is capable of performing the claimed function and identified in the specification with the performance of the function.  *See Cardiac Pacemaker*, 296 F.3d at 1113. ("[I]n order to

-12-

qualify as corresponding, the structure must not only perform the claimed function, but the specification must clearly associate the structure with the performance of the function.").

VVI contends that the specification also discloses comparison by the voter as an alternative structure corresponding to the claimed function. (Doc. No. 172 at 2-3.) VVI's argument fails for two reasons. First, "a human being cannot constitute a 'means.'" *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1300 (Fed. Cir. 2005) (citing *In re Prater*, 415 F.2d 1393, 1398 (C.C.P.A. 1969) (finding defendants' arguments that the structure corresponding to a means can entail human participation or a human being manually operating an apparatus to be "misplaced"). Thus, means-plus-function claims are not construed to "cover structures in which a human being substitutes for a part of the claimed structure." *Davies v. United States*, 31 Fed. Cl. 769, 778-79 (Fed. Cl. 1994) (citing *Brown v. Davis*, 116 U.S. 237, 249 (1886) (finding that even if a human being could perform the claimed function manually, the accused device does not infringe the patent where the accused device does not itself perform the function). Thus, the means-plus-function language in the Contested Elements will not be construed to cover a human being performing the claimed function.

Furthermore, even assuming a human being was a permissible structure under § 112, ¶ 6, the specification fails to disclose a human being performing the claimed function in its entirety. The claimed function includes not only reading the votes on the printed ballot and the votes recorded in the computer, but reading the votes in a manner that allows a computer program to compare them. The specification does not disclose a human being reading the printed votes and the votes recorded by the computer in a manner that would allow for comparison "by the computer program."[3]

---

[3] In other claims of the '449 patent, the voter's comparison of the votes on the printed ballot card to the votes stored in the computer is specifically claimed. For example, element (c) of claim

Accordingly, the Court declines to construe the structure corresponding to the claimed function to include a human being as an alternative equivalent. Instead, the Court finds the only structure corresponding to the claimed function to be a ballot scanning machine interfaced with the computer program described in element (a) of claims 1 and 25 that compares the votes read by the ballot scanning machine with the votes recorded in the computer.

In order to infringe claim 1 or claim 25 of the '449 patent, the Accused Systems must perform either the identical function claimed in the Contested Elements or a substantially similar function. *See Kemco Sales*, 208 F.3d at 1364. However, the undisputed evidence in the record demonstrates that the Accused Systems are incapable of comparing the votes on the printed ballots to the votes recorded in the computer.

The iVotronic RTAL System is designed to provide a voter with the opportunity to review the printer's continuous paper tape and compare the selections indicated on the paper tape to the candidates selections on the touchscreen. (Doc. No. 166-1 ¶ 21.) However, there is no evidence in the record to establish that the iVotronic RTAL System itself is capable of making the comparison between the selections on the printed tape and the votes in the recorded in the computer as required by claims 1 and 25. In fact, the uncontested evidence in the record demonstrates that the iVotronic RTAL System does not include any type of ballot scanning machine or other device capable of reading printed ballots or the printed selections on the paper tape.[4]

---

49 recites the method step of: "comparison *by the voter* of the printed votes with the votes temporarily stored in the computer for the voting station." (emphasis added).

[4] VVI provides no argument or evidence to the contrary, conceding that the iVotronic RTAL System does not "include any form of ballot scanning machine." (Doc. No. 172 at 6.)

The AutoMark System does include a ballot scanning device capable of reading the votes of a marked ballot and presenting a verification summary of the votes it reads on a touch screen terminal. (Doc. No. 166-1 ¶ 13.)  However, there is no evidence in the record to establish that the AutoMark System is capable of comparing the votes on the printed ballot to the votes recorded on the computer. Instead, the uncontested evidence of record demonstrates that the AutoMark System simply reads the marks on an inserted ballot and presents a verification summary based on that reading; it cannot recall any voter's selections from memory for comparison purposes because the temporary memory is cleared every time the ballot is ejected.  (*Id.*)  While VVI contends that voters accomplished the claimed function of the Contested Elements by comparing the printed votes to the votes displayed on the screens of the Accused Systems, infringement does not result where the actions of a human being are substituted for the actions of an accused device.  The accused device must itself perform the function. *Davies*, 31 Fed. Cl. at 778-79 (finding that even if a human being could perform the claimed function manually, the accused device does not infringe the patent where the accused device does not itself perform the function).

In sum, because the Accused Systems are not capable of comparing the votes of a printed ballot to the votes recorded in the computer in any manner, the Accused Systems are unable to perform either the identical function or a function substantially similar to the function claimed in the Contested Elements.  Accordingly, ES&S's Motion for Summary Judgment will be granted to the extent it seeks a finding that ES&S does not infringe claim 1 and claim 25 of the '449 patent, either literally or under the doctrine of equivalents.[5]

---

[5] VVI does not contend that any other product or combination of products attributable to the ES&S infringe the claims of the '449 patent.

## II. Dependent Claims

ES&S next argues that in light of the Court's findings on summary judgment regrading claims 1, 25, 49, 56, 85, and 93, ES&S does not infringe any independent claims of the '449 patent and therefore do not infringe any dependant claims as a matter of law.  (Doc. No. 166 at 2.)  VVI provides no response in opposition, conceding that ES&S "correctly state[s] the law of the Federal Circuit." (Doc. No. 173 at 8.)

"A conclusion of noninfringement as to [an] independent claim [] requires a conclusion of noninfringement as to the dependent claims."[6]  *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 n.5 (Fed. Cir. 2008) (citing *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007)); *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 (Fed. Cir. 2002) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed." (quotation omitted)).  Therefore, where an accused device has been found not to infringe an independent claim, the device also does not infringe the claims depending from the noninfringing independent claim as a matter of law.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1325 (Fed. Cir. 2009) (finding that because independent claim 27 was not infringed by the accused device, dependent claims 28-30 also were not infringed).

In the present case, the Court has determined that ES&S does not infringe independent claims 1, 25, 49, 56, 85, and 93 of the '449 patent.  In light of this finding and the fact that VVI does not

---

[6] In *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546 (Fed. Cir. 1989), the Federal Circuit explained that: "One may infringe an independent claim and not infringe a claim dependent on that claim.  The reverse is not true.  One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."  *Id*. at 1552.

contend that any system other than the Accused Systems infringes the claims of the '449 patent, the Court concludes that ES&S also does not infringe any of the claims depending from these independent claims, specifically claims 2-24, 26-48, 50-55, 57-84, and 86-92. Accordingly, ES&S does not infringe any valid claims of the '449 patent.[7]

### Conclusion

Based on the foregoing, the Motion for Summary Judgment of Non-Infringement of Claims 1-48, 50-55, 57-84, and 86-92 by Election Systems & Software, Inc. (Doc. No. 166, filed June 9, 2011) is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida on July 28, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[7] There are 94 claims in the '449 patent. The Court previously determined, on summary judgment, that claim 94 of the '449 patent is invalid pursuant to 35 U.S.C. § 112. (Doc. No. 155.)